UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | : | Case No. 1:13-cv-194 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI., *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER'S MOTIONS TO DISMISS (Docs. 48, 49)**

This civil action is before the Court regarding Defendant Cincinnati Children's Hospital Medical Center's motions to dismiss (Doc. 48, 49).

## I. BACKGROUND

The Plaintiffs/Relators in this case are individuals who allegedly underwent spinal surgeries performed either directly by or at the instruction of Dr. Abubakar Atiq Durrani, a spinal surgeon formerly operating in the Cincinnati area. Dr. Durrani is a party to several hundred cases, both civil and criminal, filed in the last several years accusing him of perpetrating a scheme to defraud patients by performing knowingly unnecessary spinal surgeries without informed consent. Dr. Durrani, facing impending criminal charges, fled the United States for his native Pakistan in 2013. There is no indication he will return.

In this particular civil action, Defendants are Dr. Durrani himself as well as the Center for Advanced Spine Technologies ("CAST"), an Ohio corporation solely owned

and run by Durrani, and Cincinnati Children's Hospital Medical Center ("CCHMC"), where Dr. Durrani performed some of the Relators' surgeries.[1] In this case, Relators allege that

> Defendants knowingly and falsely misled the government by stating that a) the surgeries on Relators were medically necessary and b) that the Defendants had obtained proper informed consent to experimentally use hardware and BMP-2 [a specific medical device] on Relators, at the expense of the government.

(Doc. 1, at 4). On the basis of these allegations, Relators' *qui tam* complaint brings a claim against Defendants on behalf of the United States Government for violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*. (*Id.* at 7–8). The initial complaint in this case has been consolidated with another *qui tam* complaint filed against the same Defendants by separate Relators in S.D. Ohio case no. 1:13-cv-215 ("second *qui tam* complaint").

Defendant CCHMC filed separate motions to dismiss each of the *qui tam* complaints on January 29, 2016. (Docs. 48, 49). CCHMC's motions argue that the FCA claims raised by Relators are jurisdictionally barred because the claims are based upon a public disclosure and Relators were not an original source. The motions additionally argue that Relators violated the seal of the case and have failed to state a claim upon which relief can be granted. The Court shall adjudicate CCHMC's motions to dismiss

---

[1] Originally, other defendants were also named in the complaint. (Doc. 1). Several defendants were dismissed from the case after Relators' acknowledgment that they were not the first to file a *qui tam* action for the alleged transgressions of those defendants. (Doc. 13). Two other Defendants reached a settlement agreement with Relators and with the U.S. Government which saw them dismissed from the case. (Doc. 36).

together, as the two complaints and the arguments for dismissing the complaints are very similar.

## II. STANDARD OF REVIEW

Defendants allege that the *qui tam* complaints in this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction over the claims in the complaints. Because federal courts are courts of limited jurisdiction, the relator bears the burden of establishing a court's subject matter jurisdiction over her FCA claim. *Walburn v. Lockheed Martin Corp.,* 431 F.3d 966, 969 (6th Cir. 2005); *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.,* 123 F.3d 935, 938 (6th Cir. 1997). The basis for jurisdiction must be apparent from the facts existing at the time the complaint is brought. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) ("The jurisdiction of the Court depends upon the state of things at the time of the action brought."). A district court's decision regarding whether it has subject matter jurisdiction over an FCA case is subject to *de novo* review on appeal. *Walburn*, 431 F.3d at 969.

## III. ANALYSIS

**A.    The Court does not have subject matter jurisdiction over this action.**

The FCA precludes subject matter jurisdiction whenever a putative relator's allegations are based, in whole or in part, upon publicly disclosed allegations or transactions of which the relator is not an original source. *See* 31 U.S.C. §3730(e)(4) (2007). Specifically, the Public Disclosure Rule states as follows:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

*Id.* Because the requirement is jurisdictional, there is no presumption of truthfulness to Relators' assertions regarding the issue. *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 265 (6th Cir. 2015).

The Sixth Circuit employs the following four-part inquiry, arising out of the statutory language, to determine whether the jurisdictional bar of 31 U.S.C. § 3730(e)(4) applies to a relator's case: (1) "whether there has been a public disclosure in a criminal, civil or administrative hearing; or congressional, administrative or government report, hearing, audit or investigation; or from the news media"; (2) "of the allegations or transactions that form the basis of the relator's complaint"; and (3) "whether the relator's action is 'based upon' the publicly disclosed allegations or transactions." *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998). If the answer in the instant case to each of the above questions is "yes," the final inquiry is then (4) "whether the relator qualifies as an 'original source' under § 3730(e)(4)(B), which also would allow the suit to proceed." *Id.*

### 1. There was a public disclosure in this case.

CCHMC's motions to dismiss allege that there were at least four qualifying public disclosures prior to the filing of the original *qui tam* action on March 21, 2013:

1) A complaint filed by the parents of Relator Cory Wright in state court which contained allegations of fraud related to the use of BMP-2 (a biologic medical device) in Wright's surgery performed by Dr. Durrani. (Doc. 48-3).

2) An amended complaint filed in Relator Wright's state court case substantially similar to the initial complaint. (Doc. 48-4).

3) A complaint filed in state court by Relator (from the second *qui tam* complaint) Jacob Feltner which contained allegations of fraud related to the use of BMP-2 in Feltner's surgery performed by Dr. Durrani. (Doc. 48-1).

4) A news story that appeared on the website for Cincinnati news station WLWT detailing lawsuits filed against Dr. Durrani. The story contains allegations from several individuals, including Relator Feltner, that Dr. Durrani committed medical malpractice by conducting unnecessary spinal surgeries. (Doc. 48-2).

The Sixth Circuit has consistently found that court filings, such as a plaintiff's complaint, constitute public disclosures under the FCA's Public Disclosure Rule. *United States ex rel. Doyle v. Diversified Collection Servs., Inc.*, 2006 WL 3834407, at *3 (S.D. Ohio Dec. 29, 2006); *Jones*, 160 F.3d at 330. Likewise, as the statute makes clear, reports in the news media also constitute public disclosures. *See* 31 U.S.C. § 3730 (e)(4)(A).

Relators' response to the motions to dismiss makes the conclusory statement that "[t]he civil lawsuits filed on behalf of the Relators in these consolidated actions do not constitute public disclosures[.]" This is incorrect, as demonstrated by the cited precedent above stating otherwise.

### 2. The allegations/transactions forming the basis of the *qui tam* complaints in this case were the subject of prior disclosures.

An allegation or transaction that forms the basis of an FCA complaint is considered to have been publicly disclosed in the first instance if "the information alleged is sufficient to put the government on notice of the likelihood of related fraudulent activity." *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005) ("Generally speaking, we do not require specific disclosure of fraud to find public disclosure."); *accord Jones*, 160 F.3d at 331 (finding that allegations or transactions that formed the basis of an FCA claim were publicly disclosed where "enough information exist[ed] in the public domain to expose the fraudulent transaction"). Second, if there has been a direct allegation of fraud, the Sixth Circuit "will find a public disclosure because such an allegation, regardless of its specificity, is sufficient to put the government on notice of the potential existence of fraud." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009); *Gilligan*, 403 F.3d at 389.

Relators' response to the motions to dismiss argues that the prior disclosures identified by CCHMC did not put the government on notice of the FCA claims from the two *qui tam* complaints because none of the prior disclosures specifically discussed Medicare/Medicaid fraud, which is the central allegation of this case. (Doc. 54, at 10). However, so long as the government was on notice of Dr. Durrani's underlying fraud with regards to the surgeries, it was on notice that this fraud could potentially extend to the billing procedures used for those surgeries. In *Poteet*, the relator filed a *qui tam* complaint alleging that several healthcare providers had filed false claims for Medicare

and Medicaid reimbursement in violation of the FCA. *Poteet*, 552 F.3d 507–08. These false claims were alleged to have been motivated by a bribery scheme perpetrated by a medical device manufacturer. The Sixth Circuit found the *qui tam* complaint was barred by prior disclosure due to two prior civil suits related to the bribery scheme, even though those suits did not allege Medicare and Medicaid reimbursement fraud. *Id.* at 513–15. The facts of *Poteet* are analogous to this case, where the earlier civil suits' disclosure of Dr. Durrani's alleged fraudulent surgeries serves as notice of potential fraud regarding billing Medicare and Medicaid for those surgeries.

      3.      **The *qui tam* complaints were based on the prior disclosures.**

An FCA complaint is "based upon" a public disclosure if it is "supported by" the public disclosure, even in part. *Jones*, 160 F.3d at 332; *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 940-41 (6th Cir. 1997). In this instance, it is clear that Relators' claim that Defendants defrauded Medicare/Medicaid is based upon the alleged fraudulent surgeries disclosed in the previously-mentioned prior disclosures. One is inextricably linked to the other. Accordingly, the first three elements of the *Jones* test are met, and Relators cannot maintain their *qui tam* complaints unless they are an "original source," as set forth by the statute.

      4.      **Relators were not an "original source."**

Because the Court has determined that the *qui tam* complaints in this case were based upon a previous public disclosure, the complaints can avoid dismissal only if Relators qualify as an "original source." The Sixth Circuit has explained this rule as follows:

> The FCA states that a court does not have jurisdiction over an action based upon a public disclosure unless the person bringing the action is an "original source" of the information. *See* 31 U.S.C. § 3730(e)(4)(A) and (B) (1994). "Original source" is defined as an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based upon the information. *See* § 3730(e)(4)(B).

*U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 333 (6th Cir. 1998).

Relators' knowledge is not direct and independent. Merely being the patient in a medical procedure in which one thinks fraudulent activity occurs does not make one a relator with direct and independent knowledge. Specifically, in *United States ex rel. Antoon v. Cleveland Clinic Found.*, the Sixth Circuit Court of Appeals described this situation, holding that a patient did not qualify as an original source merely because he received medical treatment and suspected fraud:

> [The patient] contends that the allegations that CCF and Dr. Kaouk violated conditions of payment are based on his own observations and a review of his private medical records. … However, that information is not sufficient to constitute direct and independent knowledge within the meaning of 31 U.S.C. § 3730(e)(4)(B), because the conclusion that Dr. Kaouk was not personally involved in the surgery is largely speculative. "[T]he purposes of the Act would not be served by allowing a relator to maintain a qui tam suit based on pure speculation or conjecture." "[M]ere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does not carry [a relator's] burden of proving that he is entitled to original source status." Although the relators suspect that CCF and Dr. Kaouk committed fraud, they do not have any direct and independent knowledge of the information upon which their allegations are based. [The patient] does not have any direct or independent knowledge of any of the essential elements of an FCA claim. He did not see whether Dr. Kaouk performed his surgery, did not observe Dr. Kaouk submit false claims, and has only suspicion that his medical records were altered. Moreover, although the [relators] "may have provided the initial impetus" for the CMS investigation, that fact does not support a conclusion that the [relators] qualify as an original source.

8

788 F.3d 605, 619–20 (6th Cir. 2015) (internal citations omitted). Likewise, in this case, Relators have no direct or independent knowledge of any fraudulent submissions of false claims. The alleged fraud in this case revolves around the use of BMP-2 [a medical device] in Relators' surgeries without their informed consent. The record demonstrates that Relator Wright, the only relator whose surgery was alleged to have been performed at CCHMC, had no knowledge of the use of BMP-2 until he spoke to his counsel sometime after the surgery took place. (Doc. 48-1, at 22–23). Furthermore, neither of the *qui tam* complaints in this case specifically identify any false claim that any of the remaining Defendants in this case submitted to the government. While conclusory allegations are made that "Defendants knowingly and falsely misled the government by stating that a) the surgeries on Relators were medically necessary and b) that the Defendants had obtained proper informed consent to experimentally use hardware and BMP-2 [a specific medical device] on Relators, at the expense of the government" (Doc. 1, at 8), there is no specific identification of who submitted the false claims, when the false claims were submitted, the content of the false claims, or whether Defendants were reimbursed by the government. Accordingly, Relators have not demonstrated "direct" or "independent" knowledge of any fraudulent activity—any information regarding BMP-2 has been acquired secondhand, and any allegations regarding the submission of false claims are merely speculative in nature.

The question of whether Relators provided information to the government before filing their complaints as required to be an original source is less clear. Defendants argue that "Relators allege that they did not even provide information to the Government at the

time they filed the complaint." (Doc. 48, at 22). Defendants base this assertion upon the following excerpt from the original *qui tam* complaint:

> Relators and their counsel have substantial evidence in their possession that further supports this Complaint. There is so much information that filing herewith was not feasible. Relators remain ready and willing to share this information with the U.S. Attorney, and will work with the U.S. Attorney to share all information in their possession, custody, and control.

(Doc. 1, at 5). This seems to indicate that Relators failed to provide pertinent information to the government *before* filing their *qui tam* complaint, which would disqualify them as original sources under *Jones*. However, later in the same complaint Relators state that

> Ralph David Scott, Cory Wright, and Rebecca Applegate are the original sources of, and have direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and have voluntarily provided such information to the Government before filing this action.

*Id.* at 7. This statement, like many of the assertions in Relators' complaints, is a conclusory statement of legal standards with no specific facts, but it does contradict Defendants' assertion that Relators themselves admit to failing to share information with the government. However, the Court need not analyze the filings in this case to determine whether Relators shared pertinent information with the government before filing the complaints in this case because the Court has already determined that Relators have failed to demonstrate any independent or direct knowledge of the false claims alleged in the complaints, and Relators therefore cannot be an original source as defined by the FCA.

Accordingly, because the claims in the *qui tam* complaints were based upon a prior public disclosure and because Relators were not an original source as defined by the

10

FCA, this Court lacks jurisdiction to adjudicate the complaints. The *qui tam* complaints in this case are therefore dismissed.

## IV. CONCLUSION

The Court has determined that it lacks subject matter jurisdiction to hear this case due to the FCA's Public Disclosure Rule. *See* Part III.A. The Court therefore declines to evaluate the other alleged grounds for dismissal articulated in Defendants' motions to dismiss, including the argument that Relators violated the seal of the case in violation of 31 U.S.C. § 3730(b)(2) and the argument that Relators' fraud claims fail to state a claim for which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Accordingly, for the reasons stated above, Defendants' motions to dismiss the two *qui tam* complaints in this consolidated civil action (Docs. 48, 49) are **GRANTED.** Both the original *qui tam* complaint (Doc. 1, Case no. 1:13-cv-194) and the second *qui tam* complaint (Doc. 1, Case No. 1:13-cv-215) are **DISMISSED.** All additional pending motions are **DENIED AS MOOT.** The Clerk shall enter judgment accordingly, whereupon this case shall be **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

Date: 6/5/17

Timothy S. Black
United States District Judge